## KIMBALL *versus* TRUE.

The bond to be taken by an officer, before replevying property, is to be in double its true value.

For his failure to take *such* a bond, it is no defence, that, in the writ, the property is stated to be of a value, less than its true value; or that the writ prescribes, as the amount of the bond to be taken, a sum less than double the true value.

The damage to be recovered against the officer, for such a failure, is the amount of injury thereby occasioned.

ON FACTS AGREED.

CASE against the sheriff for the default of his deputy in neglecting to take a sufficient bond in a replevin suit against the plaintiff for a yoke of oxen. Judgment in that suit was rendered for this plaintiff for a return of the property. The value of the oxen was alleged in the replevin writ to be $30, and the direction in the writ was to take a bond in the sum of $60.

The value of the oxen, at the time of replevying, was $35. The damage recovered in the replevin suit by this plaintiff was one cent and cost $84,20.

*A. W. Paine*, for defendant.

· What is the duty imposed upon an officer relative to the taking of replevin bonds? Is he, or not, bound by the value in the writ, and by the command and direction of the writ, or is there imposed upon him the further obligation to assess the true value of the property and require a bond accordingly?

The statute provision on this subject is contained in R. S. chap. 130, sect. 10. This provides that the bond shall be " in double the value of the goods to be replevied, conditioned as in the bond described in sect. 3."

Section 3 provides, that the bond shall be conditioned as stated in the prescribed form of the writ.

Section 1 prescribes the form to be the same as prescribed in chap. 114.

Chapter 114, sect. 1, provides, " that the forms of writs shall remain as established in 1821, chap. 63, which chapter remains unrepealed."

Statute 1821, chap. 63, sect. 9, prescribes the form of replevin writs, which form embraces, as a part of it, the blank for the value and the amount of the bond.

This form, thus prescribed, indeed, is the only enactment prior to the R. S. imposing the obligation to take a bond at all. The duty, however, of the officer to take a bond was ever recognized. This could only be required, upon the principle, that the form thus adopted and prescribed was to be regarded as a binding obligation. Counting it as such, all parts are of equally binding effect, and the construction, which imposes upon the officer the duty to take a bond at all, requires it to be taken in the penal sum named in the writ.

There can hardly be a doubt, that under the Stat. of 1821, the whole duty of the officer consisted in taking a bond of the penal sum *prescribed.* Have the Revised Statutes varied this obligation?

The negative is very clear, from the facts that these have kept in force the same *form* as existed before. And in doing so, it is a fair conclusion, that they have re-enacted it, subject to the same construction as was before given to it.

This view too is in accordance with the spirit, if not the express language, of the Repealing Act of R. S. sect. 4.

The language too of the Revised Statute in question, chap. 130, sect. 10, is in no respect different from the language of the writ, in both cases the words being the same, viz : — " double the value of the goods." If there were any doubt as to the construction to be given, if this phrase stood alone, that doubt is solved by the other provision, enacted at the same time, requiring the penalty of the bond to be according to the value named in the writ. Both statutes are to be taken together in the construction.

It was not intended to give the officer a discretion, in fixing upon the penalty of the bond. Had such been the intention, some provision would have been made, to meet the contingency and governing this discretion or defining rules for fixing the value.

In no case does the statute thus give the officer such a discretion to fix the price of property, either imposing such an obligation, or giving such a power for good or evil, as is here contended for.

Bail, on the contrary, is to be taken in such penalty as is prescribed in the writ. This bears a strong resemblance to the case at bar.

The policy of the law should be, to free the officer from all *discretionary* action as much as possible. He is a mere *executive* officer, whose duty it is to exercise the power of carrying into effect the judgments or discretions of others, while it is peculiarly the province of the judiciary to exercise the discretion of *directing*. And the same policy which, by the constitution, guarded the separation of the two powers, should carefully ensure the exercise of these same powers by its separate and appropriate officer, in whatever case its exercise may be called for. On the one hand, the *right of the*

*citizen* requires that the officer should have no power to deprive him of the benefit of his process, by a captious or over-careful exercise of discretion, and on the other hand the right of the officer demands that his course should be plainly marked out, when he is held accountable pecuniarily for his acts.

Again, it is equally a dictate of justice and common sense, and it is believed of *law*, that where the law imposes a discretion, it gives also immunity for its exercise. This seems implied in the very nature of the case. To compel a man to judge in any given matter, and then to hold him responsible in damages for the correct exercise of his judgment, is a contradiction in terms. All judicial officers, justices in poor debtor disclosures, approving of bonds, admitting to bail and discharging from prison and arrests, appraisers of real estate and of personal property, of demands turned out in disclosures, estates of deceased persons, all tax assessors, executors, administrators, guardians, and all trustees acting under warrants, imposing the most important discretion, inspectors of all kinds, surveyors of lumber, sealers, all town and corporation officers, and in general all persons who are vested with a *discretion* are held free from liability for the proper and honest exercise of it.

The officer cannot be so intimately acquainted with all kinds of property as to be capable of correctly appraising it, and it is certainly a gross injustice upon him to compel him to assume that responsibility without remuneration.

But a still greater objection lies against the ground assumed by the plaintiff. Until the writ *and bond* are placed in the officer's hands he has no power or right over the property to be replevied, nor even a right to intermeddle with it. How then shall he come to a correct conclusion about its value? A stock of goods, jewelry, gold and silver, dry goods or groceries, extensive in quantity and of large value, are frequently the object of such suits. Without a power to examine schedule and overhaul, how is it to be expected, that the officer will enable himself to fix upon a value so nearly cor-

rect as not to be responsible for any over or under valuation? Yet he is powerless with reference to the property until the valuation is made, the bond taken and finally delivered.

If objected that the doctrine contended for is an unsafe one to adopt, as leading to hazardous consequences by giving the replevying plaintiff an opportunity to commit great wrong, the answer is readily at hand that, if so, it is not the province of the *Court* by special legislation to remedy the evil. The remedy lies with another department of government.

The opinion of the Court, SHEPLEY, C. J., WELLS, RICE, APPLETON and HATHAWAY, J. J., was drawn up by

HATHAWAY, J. — Before serving a writ of replevin, the officer is required by the statute to take a bond to the defendant, with sufficient sureties, in double the value of the property replevied, (the statute is imperative,) his precept also gives him similar directions; and if he serve the writ without taking such bond as the law prescribes, and the defendant in replevin suffer damage thereby, upon the plainest principles of law and justice the officer should be liable to the extent of the injury thus occasioned.

The case finds that the value of the oxen replevied was thirty-five dollars, the bond, therefore, should have been seventy dollars. The misfeasance of the defendant's deputy is admitted by the default. If the bond had been legally sufficient it would have been security to the defendant in replevin only to the amount of its penalty, and although, in this case, the plaintiff may have been injured more than that amount by the replevin suit, yet the penal sum of such bond as the officer should by law have taken, is all the damage that the plaintiff could have sustained by his misfeasance. Upon the facts presented, therefore, the plaintiff may have judgment for seventy dollars and interest from the date of his writ.

*Knowles*, for the plaintiff.